1

2

3                          UNITED STATES DISTRICT COURT

4                        NORTHERN DISTRICT OF CALIFORNIA

5

6   JAMES HENRY FLOURNOY, P00154293,        Case No.  22-cv-06057-CRB  (PR)

7                  Plaintiff,               **ORDER OF DISMISSAL OF FIRST
                                            AMENDED COMPLAINT WITHOUT**
8           v.                              **FURTHER LEAVE TO AMEND**

9   WALMART STORES, INC., et al.,           (ECF No. 14)

10                 Defendant(s).

11          Plaintiff, a pretrial detainee at the Marin County Jail (MCJ) facing state criminal charges in

12   Marin County Superior Court and other county superior courts, and a frequent litigant in federal

13   court, has filed a pro se First Amended Complaint (FAC) for damages under 42 U.S.C. § 1983

14   alleging various violations of his federal rights in connection with a January 15, 2019 arrest and

15   prosecution for shoplifting at the Walmart store in Pleasanton, California.

16                                       **DISCUSSION**

17   A.     Standard of Review

18          Federal courts must engage in a preliminary screening of cases in which prisoners seek

19   redress from a governmental entity or officer or employee of a governmental entity.  28 U.S.C. §

20   1915A(a).  The court must identify cognizable claims or dismiss the complaint, or any portion of

21   the complaint, if the complaint "is frivolous, malicious, or fails to state a claim upon which relief

22   may be granted," or "seeks monetary relief from a defendant who is immune from such relief."  Id.

23   § 1915(b).  Pro se pleadings must be liberally construed.  Balistreri v. Pacifica Police Dep't, 901

24   F.2d 696, 699 (9th Cir. 1990).

25          To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a

26   right secured by the Constitution or laws of the United States was violated, and (2) that the alleged

27   violation was committed by a person acting under the color of state law.  West v. Atkins, 487 U.S.

28   42, 48 (1988).

United States District Court
Northern District of California

1

B.    Legal Claims

2        On February 27, 2023, the court dismissed with leave to amend plaintiff's original

3    complaint regarding the January 15, 2019 incident at the Pleasanton Walmart store.  The

4    complaint asserted claims of false arrest/imprisonment, use of excessive force, malicious

5    prosecution and negligent actions or omissions against Walmart and its involved asset protection

6    agents and employees, and the City of Pleasanton Police Department.

7        As an initial matter, the court advised plaintiff:

8    [A] private individual or entity generally does not act under color of
     state law, an essential element of a § 1983 action.  See Gomez v.
9    Toledo, 446 U.S. 635, 640 (1980).   Action taken by private
     individuals or entities may be considered under color of state law only
10   if there is such a close nexus between the state and the challenged
     action that seemingly private behavior may be fairly treated as that of
11   the state itself.  Brentwood Academy v. Tennessee Secondary Sch.
     Athletic Ass'n, 531 U.S. 288, 295-96 (2001).  The Ninth Circuit has
12   summarized the tests applied by the Supreme Court to determine
     whether action taken by a private individual or entity may be
13   considered under color of state law as follows:

14   The public function test is satisfied only on a showing that the
     function at issue is both traditionally and exclusively governmental.
15   The close nexus and joint action tests may be satisfied where the court
     finds a sufficiently close nexus between the state and the private actor
16   so that the action of the latter may be fairly treated as that of the State
     itself, or where the State has so far insinuated into a position of
17   interdependence with the [private party] that it was a joint participant
     in the enterprise. Governmental compulsion or coercion may exist
18   where the State "has exercised coercive power or has provided such
     significant encouragement, either overt or covert, that the choice must
19   in law be deemed to be that of the State.

20   Rawson v. Recovery Innovations, 975 F.3d 742, 748 (9th Cir. 2020)
     (citations and internal quotation marks omitted).  Plaintiff cannot
21   proceed with a § 1983 claim against Walmart or its AP agents or
     employees, unless sufficient facts in the FAC tend to show that they
22   acted under color of state law under one of the tests above.  See
     Dietrich v. John Ascuaga's Nugget, 548 F.3d 892, 899-900 (9th Cir.
23   2008).

24   ECF No. 8 (Feb. 27, 2023 Order) at 2-3.

25        The court also advised plaintiff of the pleading requirements for stating a claim for

26   damages under § 1983 for false arrest/imprisonment, use of excessive force in effectuating a

27   detention/arrest and malicious prosecution and provided plaintiff an opportunity to amend to

28   possibly state such a claim against the named defendants.  See id. at 3-5

United States District Court
Northern District of California

2

1    After requesting and receiving an extension of time to amend, plaintiff filed the operative

2    FAC.  In the FAC, plaintiff alleges that on January 15, 2019, he and his girlfriend entered the

3    Pleasanton Walmart store to return some items they had in a white plastic bag and do some

4    shopping.  But while plaintiff was trying to check out before returning the items in the bag, Asset

5    Protection (AP) Agent Byron Gadson questioned him about the items in the bag he had brought in

6    to return.  Plaintiff responded, "These are our returns that we came in[to] the store with through

7    automotive," but another AP agent, AP Agent Jane Doe, told Gadson that the items in the bag

8    belonged to the store and not plaintiff.  ECF No. 14 (FAC) at 3.  Plaintiff was angered by the

9    suggestion that he was stealing and left everything that he was about to purchase at the register

10   and proceeded to leave the store with his girlfriend and white plastic bag.

11   Plaintiff alleges that before reaching the outside of the store, Gadson blocked plaintiff's

12   "passage," "push[ed]" plaintiff, and "knocked/slapped the [white plastic] bag out of plaintiff's

13   arms."  Id. at 4.  Gadson wrestled plaintiff out the store's front door, "wrestling over the

14   merchandise."  Id. at 5.  Two regular Walmart store employees, John Doe 1 and John Doe 2, then

15   joined in.  John Doe 1 "came from behind plaintiff and put plaintiff in a reverse 'bear hug' (arms

16   wrapped around plaintiff's torso, locked by his fingers and hands)" as Gadson and John Doe 2

17   "taunted plaintiff with smiles on their faces."  Id.  John Doe 2 said, "'slam that bitch ass nigger!'"

18   Id.  John Doe 1 then "lifted plaintiff in the air, off the ground about four feet, and slammed

19   plaintiff to the hard concrete, 'head first,' due to plaintiff's feet being in the air."  Id. at 5-6.  The

20   slam caused plaintiff to lose consciousness, but he was awakened by John Doe 1 and John Doe 2

21   "twisting and beating plaintiff's legs and kneecaps."  Id. at 7.

22   Plaintiff further alleges that Gadson, John Doe 1, and John Doe 2 held him pinned down

23   until Pleasanton Police Officer John Doe 3 (who plaintiff appears to identify in the body of the

24   FAC as Pleasanton Police Officer Johnston) arrived and "placed handcuffs" on plaintiff.  Id. at 8.

25   Officer Johnston then investigated the incident and spoke to various eyewitnesses, including the

26   store's automotive clerk and Gadson, "about what allegedly transpired and use[d] that to arrest

27   plaintiff and his girlfriend."  Id. at 9.

28   Plaintiff also alleges that the manager of the Pleasanton Walmart store, Gadson and Jane

United States District Court
Northern District of California

3

1  Doe falsely filed criminal charges against him and conspired to not release the store's surveillance

2  video to plaintiff and his criminal defense attorney.  According to plaintiff, their actions resulted in

3  his wrongly having to "spend 3 months incarcerated" because he was "exonerated" shortly after

4  the video eventually was released.  Id. at 11, 13.

5       1.     False Arrest/Imprisonment and Use of Excessive Force

6       Plaintiff contends that the actions of Gadson, Jane Doe, John Doe 1, John Doe 2,

7  and Officer Johnston in connection with his arrest amounted to false arrest/imprisonment and use

8  of excessive force.   He also contends that Security Six Company, for which Gadson and Jane Doe

9  presumably worked, and Walmart, for which John Doe 1 and John Doe 2 worked, are also liable

10  for the false arrest/imprisonment and use of excessive force.

11       a.     Gadson, Jane Doe, John Doe 1 and John Doe 2

12       Plaintiff cannot proceed with a § 1983 claim for false arrest/imprisonment or use of

13  excessive force against Gadson, Jane Doe, John Doe 1 or John Doe 2 because the facts in the FAC

14  do not tend to show that they acted under color of state law.  See Dietrich, 548 F.3d at 899-900.

15  Plaintiff does not plausibly allege that the conduct of Gadson, Jane Doe, John Doe 1 or John Doe

16  2 amounted to state action under any of the tests summarized in Rawson v. Recovery Innovations,

17  975 F.3d 742, 748 (9th Cir. 2020), and set out by this court in its February 27, 2023 order of

18  dismissal with leave to amend.

19       First, under the "public function test," private individuals or entities are deemed to be state

20  actors for purposes of § 1983 when "the function at issue is both traditionally and exclusively

21  governmental."  Rawson, 975 F.3d at 748.  Here, even if the named AP agents and store

22  employees acted because they suspected plaintiff of committing a crime, the FAC does not

23  plausibly allege that they acted pursuant to an exclusive governmental function such as police

24  power.  Under California law, a security guard does not have the same authority that is conferred

25  upon an officer of the law.  "A security guard arrests with the same power as any other citizen."

26  People v. Taylor, 222 Cal.App.3d 612, 625 (1990).  The named AP agents' and store employees'

27  alleged use of force to arrest plaintiff and actual arrest of plaintiff until Officer Johnston arrived on

28  the scene did not constitute state action under the public function test.  See Banuelos v. Morrison,

4

No. 21-cv-1677-JVS-SK, 2021 WL 1814970, at *1 (C.D. Cal. May 6, 2021) (altercation with private store security guard that led to plaintiff's later arrest and detention by local police did not mean that security guard and his private employers were subject to suit under § 1983); Rabieh v. Paragon Sys. Inc., 316 F. Supp. 1103, 1111 (N.D. Cal. 2018) (allegations suggesting that private security guard has power to detain person on premises, temporarily confiscate property and place individual in handcuffs not sufficient to allege that security guard was state actor); Sayeg v. City of Anaheim, No. 13-cv-2009-SVW-AN, 2015 WL 12734785, at *7 (C.D. Cal. June 17, 2015) (private security guard not state actor where no authority has been conferred upon him by state beyond that possessed by all private citizens and he acted of own volition when he chose to engage suspect and assist city's police officers in restraining him); King v. Ashley, No. 14-cv-1306-KJN-P, 2014 WL 3689582, at *2 (E.D. Cal. July 23, 2014) (actions of private security guards generally do not constitute state action under § 1983).

Second, under the "close nexus and joint action tests," a private individual may be liable under § 1983 where there is "a sufficiently close nexus between the state and the private actor so that the action of the latter may be fairly treated as that of the State itself, or where the State has so far insinuated into a position of interdependence with the [private party] that it was a joint participant in the enterprise." Rawson, 975 F.3d at 748.  A private individual may be liable under § 1983 if he or she commits constitutional violations as part of a conspiracy or joint action with a state actor.  See DeGrassi v. City of Glendora, 207 F.3d 636, 647 (9th Cir. 2000) ("Private persons, jointly engaged with state officials in the challenged action, are acting 'under color' of law for purposes of § 1983 actions.") (citation omitted); Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2002) (private individual found liable under § 1983 based on conspiracy with state actor, i.e., entry into "an agreement or meeting of the minds" with police to violate plaintiff's constitutional rights) (citation and internal quotation marks omitted).  Joint action requires "a substantial degree of cooperative action." Collins v. Womancare, 878 F.2d 1145, 1154 (9th Cir. 1989).  Here, the FAC does not plausibly allege that the named AP agents and store employees jointly acted with a state actor or engaged in a conspiracy with a state actor to violate plaintiff's constitutional rights. Nor does it plausibly allege a sufficiently close nexus between a state actor and the challenged

United States District Court
Northern District of California

conduct of the named AP agents and store employees so that the action of the latter may be fairly treated as that of the state itself.

Plaintiff speculates that Gadsen, John Doe 1 and John Doe 2 worked "in concert" with Pleasanton Police because they "held [him] pinned down" until Officer Johnston "arrived and placed handcuffs on plaintiff." ECF No. 14 at 5.  But even this speculation is a far cry from the "substantial degree of cooperative action" required to find state action under the close nexus or joint action tests.  Collins, 878 F.2d at 1154.  A citizen arrest typically involves detaining a suspect until the police is contacted, and officers arrive; it does not in of itself constitute joint state action with the police.  Cf. id. at 1154-56 (finding private women's health center employees who made citizen's arrest of antiabortion protestors did not act under color of state law under joint action test where impetus for citizen's arrests came from defendants, not the police).  Plaintiff also speculates that "all of Walmart's defendants" and Officer Johnston "conspired" to falsely arrest and imprison him because they "knew each other very well" on account of Officer Johnston being the beat officer who generally responded to shoplifting calls from Pleasanton Walmart.  But it is well established that speculative and conclusory allegations of a conspiracy with a state actor are not enough to consider a private party a state actor.  See Simmons v. Sacramento County Superior Court, 318 F.3d 1156, 1161 (9th Cir. 2003).

Finally, the FAC does not plausibly allege that the named AP agents' and store employees' private conduct was effectively converted into government action due to governmental compulsion or coercion.  There is no plausible allegation or indication that "coercive power" or "significant encouragement" of the state effectively converted the private conduct of the named AP agents and store employees into government action.  See Rawson, 975 F.3d at 748.

b.      Security Six Company and Walmart

The FAC does not plausibly allege that Security Six Company or Walmart are liable under § 1983 for the alleged false arrest/imprisonment or use of excessive force.  Plaintiff does not allege facts which plausibly show that Security Six Company or Walmart maintained a policy, decision, or custom that violated plaintiff's constitutional rights, much less one that may properly be attributed to the government for purposes of § 1983.  The FAC does not plausibly

1    allege that Security Six Company or Walmart was the "driving force" behind any constitutional

2    violation committed while one of its employees was "operating as [a] state actor[ ]." <u>Stanley v.</u>

3    <u>Goodwin</u>, 475 F. Supp. 2d 1026, 1038 (D. Haw. 2006).

4                     c.      <u>Officer Johnston</u>

5                     Plaintiff contends that the actions of Officer Johnston in connection with his arrest

6    amounted to false arrest/imprisonment and use of excessive force.  Not so.

7            The FAC does not allege any facts connecting Officer Johnston to his allegations of use of

8    excessive force by Gadson, John Doe 1, and John Doe 2.  The FAC instead makes clear that by the

9    time Johnston arrived at the scene plaintiff had been pinned down and secured by Gadson, John

10   Doe 1, and John Doe 2.  The FAC does not plausibly allege that Johnston actually and proximately

11   caused the use of excessive force of which plaintiff complains.  <u>See Leer v. Murphy</u>, 844 F.2d

12   628, 634 (9th Cir. 1988).

13           The FAC does not plausibly allege that Officer Johnston actually and proximately caused

14   the false arrest/imprisonment of which plaintiff complains either.  The Fourth Amendment

15   requires that an arrest be supported by probable cause.  <u>Atwater v. City of Lago Vista</u>, 532 U.S.

16   318, 354 (2001); <u>Michigan v. Summers</u>, 452 U.S. 692, 700 (1981).  An arrest is supported by

17   probable cause if, under the totality of the circumstances known to the arresting officer, a prudent

18   person would have concluded that there was a fair probability that the suspect had committed a

19   crime.  <u>Luchtel v. Hagemann</u>, 623 F.3d 975, 979 (9th Cir. 2010).  Because the probable cause

20   standard is objective, probable cause supports an arrest so long as the arresting officer had

21   probable cause to arrest the suspect for any criminal offense, regardless of the stated reason for the

22   arrest.  <u>Devenpeck v. Alford</u>, 543 U.S. 146, 153–55 (2004).

23           A claim for false arrest is cognizable under § 1983 for violation of the Fourth Amendment

24   if the arrest was without probable cause or other justification.  <u>See Pierson v. Ray</u>, 386 U.S. 547,

25   555- 558 (1967); <u>Yousefian v. City of Glendale</u>, 779 F.3d 1010, 1014, n.1. (9th Cir. 2015)

26   (absence of probable cause is essential element of § 1983 false arrest claim).  A claim for false

27   imprisonment absent a cognizable claim for false arrest ordinarily will not state an independent

28   claim under § 1983.  <u>See Baker v. McCollan</u>, 443 U.S. 137, 142-145 (1979).

United States District Court
Northern District of California

7

United States District Court
Northern District of California

1    Plaintiff alleges that when Officer Johnston arrived at the scene, Gadson, John Doe 1, and

2    John Doe 2 had him pinned down after wrestling over the merchandise.  Johnston "placed

3    handcuffs" on plaintiff and proceeded to investigate the incident and speak to various

4    eyewitnesses, including the store's automotive clerk and Gadson, "about what allegedly transpired

5    and use[d] that to arrest plaintiff and his girlfriend." Id. at 8, 9.  Plaintiff insists that Johnston

6    should have believed what the automotive clerk told him (although he does not allege exactly what

7    that was) rather than Gadson's accusation that plaintiff had tried to steal store merchandise and

8    should have demanded to view the store surveillance video before arresting plaintiff.  Perhaps so.

9    But that is not how probable cause works.

10    The probable cause inquiry is not whether the suspect committed the offense, but rather

11    whether a reasonable officer had probable cause to think that the suspect could have committed

12    the offense.  Blankenhorn v. City of Orange, 485 F.3d 463, 475 (9th Cir. 2007).  It requires only

13    that those "facts and circumstances within the officer's knowledge" be sufficient to warrant a

14    prudent person to believe that the suspect could have committed the offense. Barry v. Fowler, 902

15    F.2d 770, 773 (9th Cir. 1990) (citation and internal quotation marks mitted).  And while an officer

16    may not ignore exculpatory evidence that would negate a finding of probable cause, the officer

17    may reasonably reject such evidence in favor of credible inculpatory evidence.  Yousefian v. City

18    of Glendale, 779 F.3d 1010, 1014 (9th Cir. 2015).  Probable cause does not require that the

19    officer's belief be correct or more likely true than false.  See United States v. Dunn, 935 F.2d

20    1053, 1057 (9th Cir. 1991).

21    Upon his arrival at the scene, Officer Johnston encountered a pinned-down suspect who

22    had gotten into a serious physical altercation with AP agents and store employees over suspected

23    shoplifted merchandise.  Johnston prudently placed plaintiff in handcuffs under the circumstances

24    and proceeded to investigate the incident before deciding to formally arrest him.  Even if Johnston

25    received conflicting stories from the automotive clerk and Gadson, there was probable cause to

26    arrest plaintiff because Johnston reasonably could believe Gadson's (and Jane Doe's) version of

27    the facts to be more credible.  See Yousefian, 779 F.3d at 1014.  After all, when Gadson asked

28    plaintiff about the merchandise in the white plastic bag plaintiff responded by trying to leave the

store with it and wrestling Gadson and two store employees over it rather than by simply showing that the merchandise was his by providing a receipt (an item he should have had if he was going to return the merchandise).  Under the circumstances set forth in the FAC, Officer Johnston could have concluded, based on the facts and circumstances within his knowledge, that there was a fair probability that plaintiff had committed a crime.  See Luchtel, 623 F.3d at 980.[1]

          2.   Malicious Prosecution

Plaintiff contends that the conduct of the manager of the Pleasanton Walmart store, Gadson and Jane Doe in falsely filing criminal charges against him and conspiring to not release the store surveillance video to plaintiff and his criminal defense amounted to a violation of due process for malicious prosecution.  But purely private conduct, no matter how wrongful, is not covered under § 1983.  See Ouzts v. Maryland Nat'l Ins. Co., 505 F.2d 547, 550 (9th Cir. 1974), cert. denied, 421 U.S. 949 (1975).  Simply put: There is no right to be free from the infliction of constitutional deprivations by private individuals.  See Van Ort v. Estate of Stanewich, 92 F.3d 831, 835 (9th Cir. 1996).

## CONCLUSION

For the foregoing reasons, the FAC is DISMISSED without further leave to amend for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915A(b).  But plaintiff's claims against Walmart and its AP agents and employees (as well as against Security Six Company) are dismissed without prejudice to bringing them in state court.

**IT IS SO ORDERED**.

Dated: September 27, 2023

_____

CHARLES R. BREYER
United States District Judge

United States District Court
Northern District of California

---

[1] Plaintiff's insistence that Officer Johnston should have demanded to view the store surveillance video before arresting plaintiff does not compel a different conclusion.  After all, plaintiff makes clear in the FAC that the store surveillance video was not available until much later.